UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA CORRAL MANAGEMENT, LLC** | **CIVIL ACTION** |
| **VERSUS** | **No. 22-2398** |
| **AXIS SURPLUS INSURANCE COMPANY** | **SECTION I** |

### ORDER & REASONS

Before the Court is a motion[1] for recusal filed by plaintiff Louisiana Corral Management ("LCM"). Defendant Axis Surplus Insurance Company ("Axis") opposes the motion.[2] For the reasons below, the Court denies the motion.

## I. FACTUAL BACKGROUND

This is an insurance dispute. Axis insured LCM's property, which was damaged during Hurricane Ida.[3] LCM alleges that Axis, its insurer, has underpaid for that damage, and has asserted claims for breach of the insurance contract and breach of the duty of good faith and fair dealing imposed by Louisiana law.[4] Though LCM is the only named plaintiff in this action, it has also asserted that Axis owes payment to an LLC that operates the restaurant housed in LCM's property, though that entity is not a named insured under the policy and it is not a party to this action.

A brief procedural history is necessary. Axis filed a timely motion *in limine* to

---

[1] R. Doc. No. 124.
[2] R. Doc. No. 131.
[3] *See generally* R. Doc. No. 1.
[4] *Id.*

exclude the testimony of LCM's expert witnesses.[5] Inexplicably, LCM did not file an opposition to that motion. The Court granted the motion, finding that LCM had failed to provide the expert reports and disclosures required by Federal Rule of Civil Procedure 26.[6] The parties then participated in a settlement conference with the United States Magistrate Judge assigned to this matter, which was unsuccessful.[7]

On January 31, 2023, the Court held the pretrial conference in chambers. At that conference, the Court inquired how the plaintiff planned to prove that Hurricane Ida caused the damage for which it seeks recovery without the benefit of expert testimony.

On February 8, 2023, the parties participated in another settlement conference with the Magistrate Judge, which was likewise unsuccessful.[8] Later that day, the Court initiated a telephone conference with counsel for both parties. The Court again expressed its concern about whether and how the plaintiff could carry its burden of proof as to causation as well as damages without expert witnesses.

During the telephone conference, the Court orally granted Axis permission to file an expedited motion for summary judgment on the issue of causation. The Court also offered to attempt to mediate this matter, which is scheduled for a jury trial on March 6, 2023, so long as both parties agreed to certain conditions.[9] Both parties

---

[5] R. Doc. No. 37.
[6] R. Doc. No. 61.
[7] *See* R. Doc. No. 81.
[8] R. Doc. No. 109.
[9] Those conditions were (1) agreement to mediate within a certain monetary bracket and (2) agreement to mediate only claims asserted by LCM, and not another non-

agreed to the conditions[10] and the conference was scheduled for the following week.

The day of the scheduled mediation conference, the Court received a letter, via email, from plaintiff's counsel, requesting that the undersigned recuse himself from this matter. The Court ordered that the plaintiff file the request as a motion and canceled the mediation.[11] LCM then filed the instant motion.

Before addressing the merits of the motion, the Court must address one issue. In the instant motion, LCM has included long quotes from what appears to be a transcript of the February 8, 2023 telephone conference described above.[12] LCM's counsel did not inform the Court or defense counsel that the call was being recorded or transcribed. This conduct indicates a lack of respect for the Court and its staff.[13] It undermines the ability of all involved to have candid, off-the-record discussions. It also has the potential to prejudice opposing counsel, who may have expressed their positions differently had they known that their statements were being recorded. Additionally, it presents potential grounds for attorney discipline.[14] And, as will be

---

party entity for which LCM has asserted entitlement to damages. The Court also required that representatives of both the plaintiff and the defendant attend in person.
[10] LCM consented to the conditions via email after the telephone conference. Exhibit 1.
[11] R. Doc. No. 120.
[12] *See* R. Doc. No. 124-11
[13] The transcript begins with the Court's judicial assistant greeting the parties.
[14] Notably, this Court's Local Rule 83.3.9 provides:
- A) The audio-recording, video-recording, taking of photographs, radio or television broadcasting, or electronic transmission of events from the courtroom or its environs is prohibited during the progress of or in connection with judicial proceedings, including proceedings before a United States Magistrate Judge, whether or not court is actually in session. Judicial proceedings, in whole or in part, may not be recorded, broadcast or transmitted by any means, including still or moving photography or any type of sound recording.

- B) As used in these rules the term "environs" means any place within the United States Courthouse and any place wherein any judge of the court may conduct judicial proceedings.

seen, the transcript of the call does not even support LCM's arguments.[15]

## II.   STANDARD OF LAW

Title 28, section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[16] The purpose of this statute "is not just to prevent *actual* partiality, but to avoid the appearance of partiality." *Jason v. LeBlanc*, No. 19-13800, 2019 WL 6895570, at *1 (E.D. La. Dec. 17, 2019) (Morgan, J.) (quoting *Republic of Pan. v. Am. Tobacco Co. Inc.*, 217 F.3d 343, 346 (5th Cir. 2000)). However, this inquiry "ask[s] how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) (citing *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990)).

Title 28, section 455(b)(4) provides that a judge "shall also disqualify himself" when "[h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding . . . ." The statute defines "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as

---

[15] For purposes of this motion, the Court will assume that the transcript that LCM has provided is accurate, though it has not been provided with a recording.

[16] Another statute, 28 U.S.C. § 144, provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." This provision is not implicated in the instant matter.

4

director, adviser, or other active participant in the affairs of a party" and further provides that "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i). Furthermore, "where an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality." *Sensley v. Albritton*, 385 F.3d 591, 600 (5th Cir. 2004) (quotation and citation omitted).

### III. ANALYSIS

#### a. Financial Interest

LCM first asserts that the undersigned should recuse himself from this matter pursuant to § 455(b)(4), because the undersigned "has a financial interest in [Axis] by way of stock ownership in BlackRock Inc." which LCM asserts is "one of the ten largest owners of AXIS stock."[17] It argues "that there is a causal connection between [the value of] BlackRock Inc. stock and its massive holding as an AXIS shareholder to the degree that the effects on AXIS['s] value [a]ffects Judge Africk's personal holding in BlackRock."

Axis disputes the veracity of these assertions, arguing that it is BlackRock Fund Advisors, not BlackRock Inc., that has an interest in Axis, and that BlackRock Fund Advisors has an interest only in Axis' parent company, not in Axis itself.[18] The

---

[17] R. Doc. No. 124-1, at 2.
[18] R. Doc. No. 131, at 8–9.

5

Court need not resolve this dispute, however, because even if LCM's factual assertions are accurate, its argument fails.[19]

It is true, as LCM notes, that a judge should recuse himself pursuant to § 455(b)(4) when he or one of his family members has a financial interest in a party to the litigation, "however small."[20] However, as stated above, § 455(d)(4)(i) specifically excludes "[o]wnership in a mutual or common investment fund that holds securities" as a financial interest in those securities "unless the judge participates in the management of the fund." The undersigned does not participate in the management of BlackRock Inc., and LCM has not asserted otherwise. Indeed, LCM does not even acknowledge the definition of "financial interest" provided in § 455(d)(4)(iii).

Furthermore, pursuant to Federal Rule of Civil Procedure 7.1(a)(1), a corporate litigant must disclose to the court "any publicly held corporation owning 10% or more of its stock." "The information required by Rule 7.1(a) reflects the 'financial interest' standard" of the Code of Conduct for federal judges and "will support properly informed disqualification decisions."[21] In this matter, Axis' corporate disclosure statement provided that "[n]o publicly held company owns 10% or more of" its stock.[22]

---

[19] LCM states that the undersigned owns stock in BlackRock Inc. ("BLK"). The Court notes that, had LCM reviewed the undersigned's financial disclosures more carefully, it would have noticed that the undersigned also has a financial interest other BlackRock entities. As discussed throughout this opinion, LCM's arguments fail regardless of this oversight.
[20] R. Doc. No. 124-1, at 5.
[21] Fed. R. Civ. P. 7.1, 2002 Advisory Committee Notes.
[22] R. Doc. No. 11.

This suggests that, whatever interest BlackRock may have in Axis, it is not sufficient to trigger disqualification in these circumstances. *See also MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 205 F.Supp.2d 158, 163 (S.D.N.Y. 2002) ("The key question is whether the company in which the judge owns stock has effective control over the party to the litigation—that is, at least 50% of the voting stock or a majority of the capital interest in the party.").

Moreover, LCM's assertions that "a huge judgment" in its favor could "[c]oncievably . . . make it impossible for the [defendant] to operate at all," and "that there is a causal connection between" the value of Axis stock and the value of BlackRock stock are "remote, contingent, [and] speculative." They are therefore "not the kind of interest[s] which reasonably bring[ ] into question a judge's partiality." *Sensley*, 385 F.3d at 600.

For all these reasons, the undersigned does not have a financial interest that requires recusal from this matter and this Court will not recuse on that basis.

### b. Alleged Bias

LCM next argues that the telephone conference that the Court initiated on February 8, 2023, "demonstrated bias" and that this provides a basis for recusal pursuant to § 455(a).[23] As stated, that subsection provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

---

[23] R. Doc. No. 124-1, at 5–6.

LCM asserts that the phone conference demonstrated bias because the undersigned "instructed that [d]efendant[ ] file a [m]otion for [s]ummary [j]udgment on causation and indicated he was going to rule in favor of" that motion.[24] LCM also notes that the undersigned indicated that Axis was likely to receive an offset on any amount owed to LCM due to payments it previously made to the entity that is not a party to this matter.[25] LCM further notes that the undersigned indicated he would "not be allowing water meter readings into evidence without an expert,"[26] that "the actual repair[ ] cost is not going to be allowed into evidence."[27] The Court further suggested that the plaintiff's attorney's fees might have to be adjusted.[28]

The transcript that plaintiff has produced in support of its motion undermines its position. LCM is correct that, throughout the conference, the undersigned expressed concern about LCM's ability to carry its burden of proof as to causation and allowed Axis to file a motion for summary judgment on that issue. But even the portions of the transcript that LCM reproduces in its motion reveal only that the undersigned was *considering* granting a summary judgment motion.[29] And, indeed, that motion for summary judgment is currently pending before the Court.

---

[24] *Id.* at 7.
[25] *Id.* at 9.
[26] *Id.*
[27] *Id.* at 11.
[28] *Id.* at 12.
[29] *See* R. Doc. No. 124-1, at 8 ("So we still have this causation issue, and *I think if* there is a lack of causation, of course the claim will fail *unless I'm missing something*. . . . And *if* I grant a summary judgment uh I guess. Although plaintiff will disagree, I'm sure, but I don't know what's left *if* I grant a summary judgment on causation for lack of causation." (emphases added)).

LCM also takes issue with the fact that the undersigned allowed Axis to file a motion regarding causation, an issue that LCM asserts had "never crossed the minds of [d]efense counsel until" the undersigned suggested it.[30] LCM's position is belied by the record. For example, in the proposed pretrial order—submitted prior to the pretrial conference and the telephone conference—Axis noted that one of "the main factual issues within the case [is] the extent to which damage was sustained and amounts owed as a result of the storm versus the claimed upgrades [and] remodel[.]"[31] Additionally, though the Court did not do so here, district courts may *sua sponte* raise grounds for summary judgment so long as it gives the non-moving party notice and a reasonable time to respond. *Jones v. Family Dollar Stores of La., Inc.*, 746 F. App'x 348, 351–52 (5th Cir. 2018).

LCM further argues that allowing Axis to file the summary judgment motion after the scheduling order's deadline had passed evinces bias. This is unconvincing. "[A] district court may *sua sponte* modify a scheduling order." *Edwards v. City of Tupelo, Miss.*, 17-131, 2019 WL 5684506, at *2 (N.D. Miss. Nov. 1, 2019). Furthermore, Rule 16 specifically provides that the Court may "determin[e] the appropriateness *and timing* of summary adjudication under Rule 56" at a pretrial conference. Fed. R. Civ. P. 16(c)(2)(E) (emphasis added); *see also id.* 16(a)(3), (c)(2)(A) (stating that the Court may also "discourage[e] wasteful pretrial activities" and "formulat[e] and simplify[ ] the issues, and "eliminat[e] frivolous claims or defenses"

---

[30] *Id.* at 8.
[31] R. Doc. No. 77, at 6.

9

during the pretrial conference). Though the Court issued its order allowing Axis to file a motion for summary judgment during the telephone conference, and not during the in-person pretrial conference, the Court's order was consistent with its role as described in Rule 16.

As to the offset issue,[32] it is true that the undersigned stated that "I've already told you what's going to happen on that."[33] But the undersigned also recognized that, at the pretrial conference, the plaintiff had asserted "that there's maybe something in the policy which should allow [the plaintiff] to get damages for the other entity." The undersigned stated, "I haven't looked at the policy. I don't know if that's in the pretrial or not, but I'd have to take a look at that[.]"[34] LCM accuses the undersigned of "provid[ing] his ruling on the credit offset issue while acknowledging that he has not read the insurance policy."[35] But, in reality, no ruling was issued, and this issue is addressed in briefing regarding motions currently pending before the Court.[36]

In sum, LCM seems to take issue with the Court calling into question the strength of its position in this litigation. LCM argues that "[t]he totality of the call required undersigned counsel to call his client and convey that it appeared that we only had two options. To settle for $1,500,000.00 or to essentially have every ruling

---

[32] Axis alleges that some of the money already paid under the policy was paid to the non-insured, non-party entity, and that it is entitled to an offset in the amount paid to that entity. This issue is raised in motions currently pending before the Court and will be resolved in orders relating to those motions.
[33] R. Doc. No. 124-1, at 9.
[34] *Id.*
[35] *Id.* at 14.
[36] *See* R. Doc. No. 64 (motion *in limine* regarding the admissibility of evidence of the non-party entity's damages).

go against Plaintiff's position regardless of [governing law]."[37] The assertion that "every ruling" would be adverse to plaintiff "regardless of" the law is an absolute falsehood. The Court found certain of plaintiff's counsels' choices incredulous, such as failing to oppose the motion *in limine* to exclude plaintiff's expert witnesses and failing to add the non-insured entity for which it seeks damages as a party to this litigation. This does not, however, indicate that the undersigned is biased against plaintiff.

"A judge may not coerce a party into settling." *Gevas v. Ghosh*, 566 F.3d 717, 719 (7th Cir. 2009); *accord Dawson v. United States*, 68 F.3d 886, 897 (5th Cir. 1995). But "he or she is not prohibited from expressing a negative opinion of a party's claim during discussions as a means to foster an agreement." *Gevas*, 566 F.3d at 720. The undersigned provided a frank assessment of its view of the plaintiff's case, based on the information provided by the parties. No rulings were issued, and neither party was prevented from further presenting the issues discussed via motions and briefing. Furthermore, even if the undersigned had issued rulings adverse to LCM, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

For all the reasons discussed above, the discussions during the telephone conference would not, in the mind of a reasonable, thoughtful observer, suggest that the undersigned was not capable of presiding over this matter in an objective manner. *Jordan*, 49 F.3d at 156.

---

[37] R. Doc. No. 124-1, at 12.

### c. Alleged Possession of Confidential Information Regarding Settlement Conferences

Finally, LCM argues that the undersigned should recuse himself from this matter because he "has personal knowledge about the disputed evidentiary facts concerning the proceedings that are not before him"[38] and "he actually acted as a mediator in the matter for a brief period of time."

There is no prohibition, in a jury trial, on a presiding judge having knowledge of settlement discussions, including knowledge of the specific figures discussed. *See Blackmon v. Eaton Corp.*, 587 F. App'x 925, 934 (6th Cir. 2014) ("[W]e cannot find authority for the proposition that participation in a mediated settlement conference categorically disqualifies a judge from later deciding a motion in that same case."); *Becker v. Tidewater, Inc.*, 405 F.3d 257, 260 (5th Cir. 2005) (noting that it is inappropriate for a judge to preside over a *bench* trial in a case he previously mediated). Additionally, Rule 16(a)(5) specifically provides that "the court may order the attorneys . . . to appear for one or more pretrial conferences for such purposes as[ ] facilitating settlement." *See also* Fed. R. Civ. P. 16(c)(2)(I), (P) (stating that "settling the case" and "facilitating in other ways the just, speedy, and inexpensive

---

[38] LCM's reference to "personal knowledge of disputed evidentiary facts" echoes language in § 455(b)(1). However, the undersigned's only knowledge as to the facts in this matter is obtained from the record and statements by counsel, and therefore does not arise from an extrajudicial source. *See Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003) ("[T]he origin of a judge's alleged bias is of critical importance. . . . As articulated by the Supreme Court, [the extrajudicial source] rule more or less divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal.").

12

disposition of the action" are appropriate matters for action at the pretrial conference).

It is true that this district's local rules provide that settlement proceedings are confidential.[39] The local rules do not state, however, that district judges are prohibited from learning of or discussing settlement proceedings in cases over which they preside. Any such prohibition would be at odds with standard practice in this and other courts.

Moreover, counsel for LCM never objected to the undersigned discussing the status and substance of settlement proceedings, and the undersigned did not require that the parties allow him to mediate the case. Indeed, when discussing the possibility of mediating the case, the undersigned stated:

> I'm not saying I want to do it. This is more work for me. I'm willing to do it if both of you all want me to do it, and if one of you has hesitation or both of you all do, then my feelings are not going to be hurt. Honestly, I'm just the referee in this thing.[40]

In response, counsel for plaintiff stated only, "I wasn't going to ask you to do it, I guess is the point, Judge."[41] The undersigned then gave the parties until the end of the day to discuss the possibility and terms of mediation with their clients. And, as noted, LCM *consented* to the undersigned acting as a mediator in this case.[42]

Finally, the Court notes that it agreed to mediate this case in part because plaintiff's counsel believed that previous mediators, including the Magistrate Judge

---

[39] LR 16.3.1.
[40] R. Doc. No. 124-11, at 10.
[41] *Id.*
[42] Exhibit 1.

to which this matter is assigned, were not capable of "objectively evaluat[ing] the case."[43] It would have been unreasonable to attempt to resolve the matter with a new mediator—who would have been the fourth mediator to attempt to settle the case—mere weeks before the trial.[44]

The undersigned's efforts to settle the case would not, in the mind of a reasonable, thoughtful observer, suggest that the undersigned was not capable of presiding over this matter in an objective manner. *Jordan*, 49 F.3d at 156.

### d. Timeliness

The Court has already concluded that the motion to recuse fails on the merits. Even so, it will briefly address LCM's arguments as to timeliness. LCM concludes its motion with the assertion that "Judge Africk as not expended much time on [this] case" and that "Judge Africk has only ruled on one motion to extend time to the Defendant."[45] This is false. In connection with this matter, the Court has held a routine status conference,[46] a pretrial conference,[47] and the telephone conference discussed throughout this opinion. The Court issued an order and reasons on defendant's motion *in limine*, which plaintiff's counsel did not bother to oppose.[48] And, as discussed, the Court offered to expend additional time and resources on mediating the case.

---

[43] *See* R. Doc. No. 131-1, at 2.
[44] *Id.*
[45] R. Doc. 124-1, at 16.
[46] R. Doc. No. 21.
[47] R. Doc. No. 100.
[48] R. Doc. No. 61.

In short, LCM's motion is devoid of merit. Indeed, in the Court's opinion, the motion is nothing more than a transparent attempt by plaintiff's counsel to delay the proceedings and to shift the blame for a potentially adverse outcome onto the Court. Of note, currently pending before the Court are a motion to "stay pending appraisal and in the alternative to allow plaintiff to retain [a] causation expert"[49] and a motion to continue the trial,[50] both filed by LCM. Pending before the Magistrate Judge is LCM's motion to compel discovery or, in the alternative, extend the discovery deadline.[51] In addition to these motions, LCM has filed motions to strike certain of defendant's witnesses and limit their testimony,[52] and to "exclude causation testimony."[53] Underlying these filings is, as Axis puts it, a contention that LCM "should be allowed to back up three months, retain an expert on causation, and reopen discovery" without regard for the Court's scheduling order or for potential prejudice to the defendant.[54] The Court rejects that contention.

As the Fifth Circuit very recently noted, "[t]he four most powerful words from the lips of a United States District Judge are simply 'Call your first witness[.]'" *In re Toronto-Dominion Bank*, 22-20648 c/w 23-20033, slip op. at 2 (5th Cir. Feb. 14, 2023). The undersigned will so state in less than two weeks.

---

[49] R. Doc. No. 108.
[50] R. Doc. No. 113.
[51] R. Doc. No. 102-1, at 10.
[52] R. Doc. Nos. 72, 73, 106.
[53] R. Doc. No. 107.
[54] R. Doc. No. 131, at 13.

## IV. CONCLUSION

In short, LCM has provided no reasonable basis for its assertion that the undersigned cannot preside over this matter in an objective manner. Accordingly,

**IT IS ORDERED** that the motion for recusal is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's counsel provide a copy of this Order & Reasons to the plaintiff and certify to the Court, in writing and within 48 hours of the docketing of this order, that plaintiff has received a copy of the same.

New Orleans, Louisiana, February 22, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 1

| | |
|---|---|
| From: | Shelby Talley |
| To: | Meredith Severtson |
| Cc: | Mark Montiel |
| Subject: | 2:22-cv-02398-LMA-DPC Louisiana Corral Management, LLC v. Axis Surplus Insurance Company |
| Date: | Wednesday, February 8, 2023 4:01:53 PM |

**CAUTION - EXTERNAL:**

Hi Meredith,

Our client, Louisiana Corral Management, is agreeable to Judge Africk's proposal to a carve out Louisiana Corral of Houma's claims and to mediate within the proposed bracket.

Best,

Shelby



**Shelby S. Talley**
*Attorney*
400 Poydras St., Suite 2325
New Orleans, LA 70130
Office: (504) 323-5885
Direct: (504) 517-6185
Fax:    (504) 308-0511

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.